# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL E BOYD,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES, et al.,<br><br>    Defendants. | Case No.  15-cv-03494-BLF<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

This action arises out of foreclosure proceedings initiated after Plaintiff Michael Boyd ("Boyd") defaulted on two loans secured by two properties, one in Soquel, California and one in Sunnyvale, California.  Pending before the Court are motions to dismiss filed by Defendants Governor Jerry Brown ("Governor Brown"), Director of Finance Michael Cohen ("Director Cohen"), Attorney General Kamala Harris ("Attorney General Harris"), State Controller Betty Yee ("Controller Yee"), and the United States.  Boyd has also requested a notice of lis pendens in this action.  ECF 115.  For the reasons stated herein, the Court GRANTS each motion to dismiss and DENIES the request for notice of lis pendens.

## I.  BACKGROUND

To provide background in this case, the following facts are taken from Boyd's initially filed complaint and the first amended complaint.  However, the instant motions are evaluated based solely on Verified Amended First Amended Complaint  ("AFAC"), the operative complaint in this case.

In 2006, Boyd obtained loans secured by mortgages on a property located on Lakebird Drive in Sunnyvale, California and another property located on Soquel Drive in Soquel, California (the "Properties").  Compl. ¶ 9, ECF 1; AFAC ¶ 77, ECF 93.  At some point thereafter, Boyd

1  defaulted on the two loans, leading to recording of notices of default and initiation of foreclosure
2  proceedings. Compl. ¶ 10. GMAC, a defendant named in Boyd's initial complaint but no longer
3  named in the AFAC, serviced the loans until servicing was transferred to Ocwen Loan Servicing
4  LLC. *Id.* ¶¶ 5, 9.

5  Around this time period, the United States and forty-nine states sued several mortgage loan
6  servicers in the U.S. District Court for the District of Columbia in March 2012. Ex. 1 to Compl.
7  93, ECF 1-1; AFAC ¶¶ 9, 10. The suit was resolved through a settlement agreement known as the
8  "National Mortgage Settlement." AFAC ¶¶ 10-13, 27. According to Boyd, pursuant to this
9  settlement, the mortgage loan servicers agreed to pay approximately $5 billion and institute
10 various reforms. *Id*. ¶ 12. The State of California received approximately $410 million from the
11 settlement and placed its share of the settlement funds into the National Mortgage Special Deposit
12 Fund. *Id*. ¶¶ 12-13.

13 In 2014, some community groups filed a petition for writ of mandate in the Sacramento
14 County Superior Court alleging that California's portion of the settlement had been improperly
15 diverted from the Special Deposit Fund and used for purposes not allowed by the terms of the
16 consent judgment. *Id.* ¶¶ 3, 10, 13. The Sacramento Court agreed and found that approximately
17 $331 million had been unlawfully diverted from the Special Deposit Fund to the State of
18 California's General Fund. *Id.* ¶¶ 10, 13, 76.

19 Based on these lawsuits, Boyd alleges that United States and California state government
20 defendants "victimized" loan borrowers "in concert with GMAC." *Id.* ¶¶ 3, 9. Boyd also alleges
21 that he owns the Properties in fee simple based on theories involving a third-party beneficiary
22 relationship and the federal land patent proceeding of 1851. *Id.* ¶¶ 5, 6, 16-18, 30.

23 On July 29, 2015, Boyd filed the instant action against United States Department of the
24 Treasury, Treasury Secretary Jack Lew, Governor Edmund G. Brown, Jr., Attorney General
25 Kamala D. Harris, Department of Finance Director Michael Cohen, State Controller Betty Yee,
26 GMAC Mortgage LLC, and Mortgage Electronic Registration Systems. Compl. On August 3,
27 2015, Boyd voluntarily dismissed GMAC Mortgage LLC and Mortgage Electronic Registration
28 Systems. ECF 3. On August 15, 2016, this Court granted Defendants' motions to dismiss with

leave to amend. The grounds for dismissal included lack of Article III standing, Eleventh Amendment immunity, sovereign immunity, and insufficiency of the allegations to state a claim, and Boyd was allowed to substitute United States as a defendant in place of United States Treasury and Jack Lew. ECF 76. Boyd subsequently moved for leave to amend to add "Quiet Title" as an additional cause of action, which this Court granted. ECF 81, 90. Boyd then filed the AFAC on November 1, 2017, which Defendants now move to dismiss.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges whether a court has subject matter jurisdiction to hear the action. In deciding a Rule 12(b)(1) motion, the court is not restricted to the pleadings, but can also "review any evidence, such as affidavits and testimony, to resolve factual disputes regarding the evidence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once subject matter jurisdiction is challenged, the party opposing the motion bears the burden of establishing jurisdiction. *See, e.g.*, *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.2d 1115, 1122 (9th Cir. 2010).

### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the face of his claim. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any complaint that does not meet this requirement can be dismissed pursuant to Rule 12(b)(6). In interpreting Rule 8(a)'s "short and plain statement" requirement, the Supreme Court has held that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires that "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not ask a plaintiff to plead facts that suggest he will probably prevail, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). The Court must "accept factual allegations in the complaint as true and construe the pleadings in

the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008).

**III.   DISCUSSION**

    **A.   Controller Yee's Motion to Dismiss**

Boyd alleges three claims against Controller Betty Yee – the second cause of action for "Gross Negligence" and "Willful Misconduct," AFAC ¶¶ 48-50, and the fourth cause of action for a violation of 42 U.S.C. § 1983. *Id.* ¶¶ 57-58. Boyd also asserts a quiet title cause of action generally against all Defendants, including Controller Yee. *Id.* ¶¶ 60-78. Controller Yee seeks to dismiss Boyd's complaint because he lacks Article III standing, the claims are barred by the Eleventh Amendment, and he fails to comply with the California Tort Claims Act. Yee Mot., ECF 102. Controller Yee further argues that the quiet title cause of action fails because she asserts no adverse claim to title in the Properties and that AFAC is deficient for not alleging that Boyd has tendered the full outstanding indebtedness on the mortgages. *Id.* at 9-10.

The Court finds that the AFAC fails to cure the deficiencies identified in this Court's prior order, including the failure to allege Article III standing. An injury for Article III standing purposes must be "actual or imminent, not conjectural or hypothetical." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). Just like the prior complaint, the AFAC claims a theory of an injury arising from the $331 million that was allegedly "diverted from the National Mortgage Special Deposit Fund" without any allegation as to Boyd's entitlement to receive a portion of those funds. AFAC ¶¶ 10, 13. As a result, Boyd has not sufficiently alleged Article III standing.

Boyd's newly added theories based on federal land patent proceeding of 1851 ("Land Patents") and a third-party beneficiary relationship, together with the allegations relating to "diversions from the National Mortgage Special Deposit Fund," do not remedy the deficiencies in the AFAC. *Id.* ¶¶ 9, 11, 13, 22-36. For example, Boyd alleges that "the Land Patents enable his Article III standing" without explanation or citation to any relevant legal authority. *Id.* ¶¶ 9, 11. Such legal conclusion does not support Article III standing. Boyd also asserts that the "Land Patents" give rise to contract liabilities, *id.* ¶¶ 22-23, and that "alleged diversions from the

National Mortgage Special Deposit Fund" give rise to tort liabilities, both because of a third-party beneficiary relationship, *id.* ¶¶ 25-36. However, these allegations relating to a third-party beneficiary relationship amount to nothing more than legal conclusions and the AFAC still does not recite any facts relating to any cognizable injury and how Controller Yee's conduct caused that injury. Even if the Court were to construe the AFAC as Boyd's attempt to enforce the National Mortgage Settlement consent judgment, numerous courts have held that individual loan borrowers have no standing to enforce that judgment. *E.g.*, *Lawrence v. Wells Fargo Bank, N.A.*, No. 14-1272-PJH, 2014 WL 2705425, at *6 (N.D. Cal. June 13, 2014) (collecting cases).

Second, separate from the lack of Article III standing, the claims against Controller Yee must be dismissed because the AFAC, like the prior complaint, asserts claims against Controller Yee in her official capacity and the Eleventh Amendment prohibits lawsuits against state officials sued in their official capacity. *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007) (quotations omitted). Controller Yee is the Chief Fiscal Officer of the State of California, a position established by the California Constitution. Thus, claims against Controller Yee are claims against the State of California and barred by the Eleventh Amendment. *See* Cal. Const. art. V, § 11.

Boyd counters that his ownership of the Properties where the title "is clearly traceable back to a Spanish Land Grant" abrogates Eleventh Amendment immunity. AFAC ¶¶ 5-6 (citing *Summa Corp. v. Cal. ex rel. State Lands Comm'n*, 466 U.S. 198 (1984)); Opp'n 10-11. This claim is unsupported by any authority and reveals Boyd's misunderstanding of land patents. The 1848 Treaty of Guadalupe Hidalgo, which formally ended the Mexican-American war, "resulted in Mexico ceding a region of the present day Southwestern United States, including California, to the United States." AFAC ¶ 16; *see also U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 641 (9th Cir. 1986). Congress subsequently passed the Act of March 3, 1851, ch. 41, 9 Stat. 631 (1851), which established a Board of Land Commissioners with the power to decide the rights of every person "claiming lands in California by virtue of any right or title derived from the Spanish or Mexican government." *U.S. ex rel. Chunie*, 788 F.2d at 641, 644-45; *Summa*, 466 U.S. at 206; Yee Mot. 7. Valid claims were confirmed by the Board of Land Commissioners, which would then issue a land

patent confirming the claimant's title to the property. *U.S. ex rel. Chunie*, 788 F.2d at 641. Any land not subject to a valid claim within the prescribed two-year period was deemed part of the public domain of the United States. *Id.*

Contrary to Boyd's arguments, nothing in this history of land patent proceeding waives California's Eleventh Amendment immunity. The alleged land patents under which Boyd claims title as a successor-in-interest merely create a standard fee title to property, as held by any owner of real property in the State of California. *Boquillas Land & Cattle Co. v. Curtis*, 213 U.S. 339, 344 (1909) (finding the term "quitclaim" deed used in *Beard* to be incorrect in describing the land patents, and noting that the land patents merely confirmed title to land in the United States as it was under Mexico) (citing *Beard v. Federy*, 70 U.S. 478, 479 (1865)). As such, Boyd has not alleged that any exception to Eleventh Amendment immunity applies in this case.

Third, Boyd's failure to comply with the California Tort Claims Act ("CTCA") precludes him from bringing a tort or contract claim against a public entity of California, such as Controller Yee. "The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part." *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (internal citations omitted); Cal. Gov't Code §§ 905.2 (setting forth the presentation requirement for any claims for money and damages); 945.4 (prohibition of suit without claim presentation). A plaintiff's state law claims against a public entity are barred unless the plaintiff presented a timely written claim to the public entity prior to commencing the lawsuit. *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009). Accordingly, any tort or contract causes of action alleged in the AFAC are deficient as they are made without an allegation that the claims were previously presented in accordance with the California Tort Claims Act. *Hernandez v. McClanahan*, 996 F. Supp. 975, 979 (N.D. Cal. 1998) (holding that compliance with the procedural requirements of the CTCA are "mandatory" and are "substantive elements" of a cause of action) (citing *United States v. California*, 655 F.2d 914, 918 (9th Cir. 1980)).

Lastly, as to the quiet title cause of action, even if the Court were to set aside the Eleventh Amendment immunity, Boyd's failure to comply with CTCA, and his lack of Article III standing,

6

the AFAC still fails to state this claim. A quiet title action must include: (1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse claims to plaintiff's title. Cal. Civ. Proc. Code § 761.020. Here, the claim of quiet title is deficient at least because the AFAC states no adverse claims to Boyd's title and neither can Boyd, as none of the defendants named in the AFAC has adverse claims to title of the Properties. *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 802 (2013) (finding the quiet title claim deficient because none of the defendants had adverse claims to title). Moreover, it is a settled rule that an action to set aside a foreclosure sale should be accompanied by an offer to pay the full amount of the debt for which the property was security. *Lundy v. Selene Fin., LP*, No. 15-CV-05676-JST, 2016 WL 1059423, at *6 (N.D. Cal. Mar. 17, 2016) (citing *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578-79 (1984)). Without payment of debt, Boyd has not alleged proper tender with respect to the Properties.

In an attempt to support the quiet title cause of action, Boyd argues that the "alleged diversions from the National Mortgage Special Deposit Fund" is a "trespass" or "prescriptive easements" over the Properties. Opp'n 5-6, 9-10. However, this novel theory is unsupported by authority. Boyd also argues that there are "prescriptive easements" in the form of "a sidewalk, a street stop-light, and a street light" on the one of the Properties and "a sidewalk and street trees" on the other. *Id.* at 10. However, it is unclear how Controller Yee, the California chief fiscal officer, wields any legal authority over these alleged "easements." Moreover, these arguments do not overcome the lack of standing, the Eleventh Amendment immunity, and the lack of compliance with the CTCA discussed above.

Boyd further argues that there is no need to allege proper tender because there was no "trustee's sale" of the Properties to be "set aside" and that "the full amount of the debt for which the property was security" should be zero. Opp'n 6-7. This argument contradicts the allegations in Boyd's initial complaint. Compl. ¶¶ 9, 10, 14. Nonetheless, if there is no debt or no foreclosure to be set aside, this argument only further confirms the lack of case and controversy in this case, and the lack of Boyd's Article III standing.

Accordingly, the Court GRANTS Controller Yee's motion to dismiss.

### B. Attorney General Harris' Motion to Dismiss

Similar to Controller Yee, Defendant Attorney General Kamala Harris is named in the second claim for "Gross Negligence" and "Willful Misconduct" and fourth claim for a violation of 42 U.S.C. § 1983. AFAC ¶¶ 48-50. Boyd also asserts a quiet title cause of action generally against all Defendants, including Attorney General Harris. *Id.* ¶¶ 60-78.

Attorney General Harris moves to dismiss Boyd's entire AFAC for several reasons. Attorney General Harris Mot, ECF 105. Attorney General Harris first seeks to dismiss all of Boyd's causes action against her because Boyd has not alleged any facts indicating a case or controversy exists between himself and her. Mot. 4-5, ECF 41. There is no standing in a federal court when the plaintiff has not "shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). Here, the AFAC alleges no "actual injury redressable by the court" with respect to Attorney General Harris. *Id.* at 39. For the same reasons the causes of action against Controller Yee are dismissed as discussed above, the AFAC's conclusory allegations relating to third-party beneficiary or land patents provide no facts relating to any cognizable injury or how Attorney General Harris' conduct caused that injury. Even assuming there was a cognizable injury, the AFAC fails to provide any basis as to how enjoining Attorney General Harris could provide any of the requested relief to redress Boyd's alleged injury. Therefore, Boyd has not alleged that a case or controversy exists as to Attorney General Harris.

Second, Attorney General Harris also argues that the Eleventh Amendment precludes all of Boyd's claims. Harris Mot. 5-6. "For sovereign immunity purposes, we treat [suits] against state officials in their official capacities as a suit against the state of California." *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (citation omitted). "The Eleventh Amendment bars such a suit unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or a state has waived it." *Id.* Congress has not abrogated Eleventh Amendment immunity for § 1983 claims and Attorney General Harris has not waived immunity with respect to the § 1983 claim. *See, e.g.*, *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989); *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) ("The State of California has

8

not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court").

The AFAC's allegations regarding land patents and a third-party beneficiary relationship fail to support a waiver of California's Eleventh Amendment immunity, as discussed above for Yee. Harris Mot. 5-6. Boyd's claims that he is a successor-in-interest to the Properties merely support a claim of a standard fee title to property—and does not support an exception to Eleventh Amendment immunity. Also, as discussed above with respect to Controller Yee, Boyd has not alleged compliance with the California Tort Claims Act for any tort or contract causes of action against Attorney General Harris. Harris Mot. 8; s*ee, e.g.*, *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239-40 (2004).

Lastly, Boyd's claim of quiet title against Attorney General Harris fails for the same reasons as the claim of quiet title failed against Controller Yee. As set forth above, the AFAC fails to allege an adverse interest. Boyd's arguments relating to land patents, a third-party beneficiary relationship, and prescriptive easements cannot overcome the deficiencies of the quiet title claim and all other causes of action against Attorney General Harris. Accordingly, the Court GRANTS Attorney General Harris's motion to dismiss all of the claims asserted against her.

### C. Governor Brown's and Director Cohen's Motion to Dismiss

Like Controller Yee and Attorney General Harris, Governor Jerry Brown and Director of Finance Michael Cohen are named in the second and fourth causes of action. AFAC ¶¶ 48-50. Boyd also asserts a quiet title cause of action generally against all Defendants, including Defendants Governor Brown and Director Cohen. *Id.* ¶¶ 60-78.

Governor Brown and Director Cohen first seek to dismiss all claims against them on the basis of Eleventh Amendment immunity. Brown Mot. 5-6, ECF 101. "For sovereign immunity purposes, we treat [suits] against state officials in their official capacities as a suit against the state of California." *Holley*, 599 F.3d at 1111 (citation omitted). "The Eleventh Amendment bars such a suit unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or a state has waived it." *Id.* Just like Controller Yee and Attorney General Harris, Governor Brown and Director Cohen have not waived immunity with respect to

any causes of actions asserted against them by Boyd. *See, e.g.*, *Will,* 491 U.S. at 66; *Dittman*, 191 F.3d at 1025 ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court"). As set forth above, theories that land patents and a third-party beneficiary relationship created a waiver of the immunity are unsupported by authority and the AFAC provides no other allegations that would support an exception to Eleventh Amendment immunity. *See also Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit").

Boyd's state law claims for willful misconduct and gross negligence are also dismissed on the separate ground that the AFAC has not alleged compliance with the California Tort Claims Act. *Mangold*, 67 F.3d at 1477 (9th Cir. 1995); Cal. Gov't Code §§ 905.2, 945.4; *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 208 (2007) (holding that "[b]efore suing a public entity, the plaintiff must present a timely written claim for damages to the entity"); Brown Mot. 7-8.

Further, Boyd's factual allegations with respect to Governor Brown and Director Cohen remain vague and deficient like the prior complaint. The AFAC does not allege that Governor Brown and Director Cohen owed a duty to Boyd for the gross negligence claim, that they acted willfully for the willful misconduct claim, or that they deprived him of a federal right in support of the § 1983 claim. Brown Mot. 8-10. As discussed above for Controller Yee and Attorney General Harris, the AFAC also does not contain any allegations as to how Governor Brown or Director Cohen hold an adverse claim against the Properties in support of the quiet title cause of action. Contrary to Boyd's arguments in his opposition, the judgment relating to the National Mortgage Special Deposit provides Boyd no standing to enforce the judgment. Opp'n 6, 8; *Lawrence*, 2014 WL 2705425, at *6. Boyd's arguments relating to sidewalks and "prescriptive easements" also do not remedy the insufficient allegations in the AFAC and cannot overcome the Eleventh Amendment immunity and the lack of compliance with the CTCA, as discussed above. Accordingly, the Court GRANTS Governor Brown and Director Cohen's motion to dismiss.

### D. United States' Motion to Dismiss

Boyd alleges claims against Defendant United States for "Gross Negligence and "Willful

Misconduct," in the first cause of action, and "First Amendment retaliation" and equal protection claim, in the third cause of action. AFAC ¶¶ 37-47, 51-56. Boyd also asserts a quiet title cause of action but it is unclear whether it is asserted against Defendant United States. *Id.* ¶¶ 60-78; Opp'n 4-6.

United States first moves to dismiss the tort claims on the ground that Boyd has not alleged exhaustion of administrative remedies for his tort claims. U.S. Mot. 4, ECF 100. The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity to certain tort claims and is "the exclusive remedy for torts committed by Government employees in the scope of their employment." *United States v. Smith*, 499 U.S. 160 163 (1991); *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979); *Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir. 2011); 28 U.S.C. §§ 1346(b)(1), 2679(b)(1). Prior to initiating an action under the FTCA, a plaintiff must first exhaust administrative remedies by presenting a claim to the appropriate Federal agency. 28 U.S.C. § 2675(a). The § 2765(a) presentment requirement is satisfied by "(1) a written statement sufficiently describing the injury to enable to agency to begin its own investigation, and (2) a sum certain damages claim." *Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985) (internal quotation marks omitted). The plaintiff may then bring a civil case only once the agency "finally denie[s]" the claim or fails to arrive at a "final disposition of [the] claim within six months after it is filed." 28 U.S.C. § 2675(a). The claim-exhaustion requirement "is jurisdictional in nature and may not be waived." *Spawr v. United States*, 796 F.2d 279, 280 (9th Cir. 1986) (citing *Burns*, 764 F.2d at 724). Like Boyd's prior complaint, Boyd's AFAC contains no allegation of compliance with the FTCA. Accordingly, the first cause of action is dismissed for failing to comply with the presentation requirement of the FTCA.

Further, Boyd's claims of tortious interference with his "Land Patent rights" are not permitted under the FTCA. U.S. Mot. 6; AFAC ¶ 22; 28 U.S.C.A. § 2680(h) (listing claims arising out of "interference with contract rights" as one of the exceptions to claims that could be brought under the FTCA). Boyd's AFAC and opposition provide no allegations or arguments directed to why this claim based on interference with his land patent rights should survive.

As to the third cause of action involving First Amendment retaliation claims and equal

11

protection claims, United States moves to dismiss based on sovereign immunity. U.S. Mot. 7. The United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The AFAC provides no allegations and no authority demonstrating that the United States has waived sovereign immunity for constitutional claims against the United States. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) (holding that the "courts lack subject matter jurisdiction to hear constitutional damage claims against the United States, because the United States has not waived sovereign immunity with respect to [the] claims"). As such, this third cause of action relating to First Amendment retaliation and equal protection claims cannot stand.

Even assuming there is no sovereign immunity and the causes of action comply with the requirements of the FTCA, all of the causes of actions still remain deficient for not providing any specific allegations in support of the claims. Allegations such as "the 'liquidity and stability to the financial system' is a tort liability to the United States as an incidental third-party beneficiary" are conclusory and do not provide any facts demonstrating that the United States had committed a tort, a contractual breach, or a constitutional violation. *E.g.*, AFAC ¶ 8. The AFAC does not explain how any of the allegations support "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

As to the quiet title cause of action, this claim fails for the same reasons discussed above with respect to other defendants. Briefly, the AFAC fails to allege that the United States has an adverse claim against the Properties.

Boyd's allegations and arguments that "United States had no authority to purchase stock ownership interest in GMAC" cannot remedy any of the AFAC's deficiencies discussed above. AFAC ¶¶ 25-26; Opp'n 7. Like the prior complaint, Boyd appears to be seeking redress for torts committed by GMAC. And as noted by this Court's prior order, contrary to Boyd's belief, the United States Department of Treasury's stock holdings did not make the federal government liable for alleged torts committed by GMAC. *See, e.g.*, 12 U.S.C. §§ 5201, 5211 (explaining that the purpose of Troubled Assets Relief Program ("TARP") was to help restore liquidity and stability to the financial system, not to take control of financial institutions). Boyd, other than alleging that

the United States was involved with GMAC through TARP, fails to allege any facts regarding how the United States has committed the alleged breach or violations. Moreover, the allegations relating to TARP provide no private right of action for Boyd. *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009) (holding that there is no express or implicit private right of action under TARP) (citing 12 U.S.C. § 5201 *et seq.* and 12 U.S.C. § 5229).

### E.  Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

It is unclear whether three of the factors – undue delay, bad faith, or dilatory motive – are applicable here because the present determination on whether to grant leave does not stem from a motion for leave by Boyd. Undue prejudice to the opposing party also has limited application here because the complaint has given Defendants fair notice of the asserted claims.

The Court, however, finds that the remaining factors – repeated failure to cure deficiencies by amendments previously allowed, and futility of the amendment – to be dispositive. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). The Ninth Circuit has alternatively stated that the test of whether amendment would be futile is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.*; *see Utterkar v. Ebix, Inc.*, No. 14-02250-LHK, 2015 WL 5027986, at *8 (N.D. Cal. Aug. 25, 2015).

13

Here, Boyd's causes of action are deficient for several reasons, including United States' sovereign immunity, California's Eleventh Amendment immunity, failure to comply with claim presentation requirements of FTCA and CTCA, and insufficiency of the allegations. Notably, the newly added allegations relating to the federal land patent proceeding of 1851 and theories of a third-party beneficiary relationship do not address any of the deficiencies identified by the prior round of motions to dismiss. As discussed above, these theories, as well as the other conclusory allegations in the AFAC, fail to confer Article III standing and fail to support a claim against any of the defendants. Boyd has not proffered an alternative theory or facts that could render the claims viable. Furthermore, Boyd has had prior opportunities for substantive amendments to address the deficiencies identified by Defendants' motions to dismiss. As such, there is also a repeated failure to cure the deficiencies. Accordingly, the Court GRANTS Defendants' motions to dismiss without leave to amend.

### F. Request for Notice of Lis Pendens

In connection with the filing of the AFAC, Boyd has also requested that this Court issue a notice of lis pendens. ECF 115. A lis pendens provides constructive notice of the litigation, such that any judgment later obtained in the action relates back to the filing of the lis pendens. *Slintak v. Buckeye Ret. Co., L.L.C.*, 139 Cal. App. 4th 575, 586 (2006). "A lis pendens clouds title until the litigation is resolved or the lis pendens is expunged, and any party acquiring an interest in the property after the action is filed will be bound by the judgment." *Id.* at 586-87. Lis pendens requires that a claimant establishes by a preponderance of the evidence the probable validity of the real property claim. *Lundy v. Selene Fin., LP*, No. 15-CV-05676-JST, 2016 WL 1059423, at *3 (N.D. Cal. Mar. 17, 2016); *Kirkeby v. Superior Court of Orange Cty.*, 33 Cal. 4th 642, 647 (2004); *see also* Cal. Code Civ. Proc. § 405.3 (defining "probable validity" to mean that "it is more likely than not that the claimant will obtain a judgment against the defendant on the claim").

Because the AFAC fails to state a viable claim against any of the defendants, Boyd has not established by a preponderance of the evidence the probable validity of any real property claim. Accordingly, the Court DENIES Boyd's request for notice of lis pendens.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the all of Defendants' motions to dismiss the First Amended Complaint are GRANTED without leave to amend. Boyd's request for issuance of a notice of lis pendens is also DENIED.

Dated: March 27, 2017

_____
BETH LABSON FREEMAN
United States District Judge

15